**IN THE CIRCUIT COURT OF WEAKLEY COUNTY, TENNESSEE**
**AT DRESDEN**

*SUMMONS IN A CIVIL ACTION*

HAROLD MILLER

    *Plaintiff(s)*

v.

DOCKET: 2010-CV34

LAWYERS TITLE INSURANCE CORPORATION,

    *Defendant(s).*

<u>TO THE ABOVE NAMED DEFENDANT(s):</u>

    You are hereby summoned and required to file with the clerk and serve upon Kyle C. Atkins, Plaintiff's Attorney, whose address is 1302 Main Street, P.O. Box 160, Humboldt, Tennessee an Answer to the Complaint herewith served upon you, within 30 days after service, exclusive of the day of service. If you fail to do so, a judgment by default can be taken against you for the relief.

    Issued this 20th day of _____July_____, 2010.

                         PAM BELEW, CIRCUIT COURT CLERK

                         By: _____

### <u>RETURN ON SERVICE OF SUMMONS</u>

    I certify that I served this summons on the _____ day of _____, 20____,

together with a copy of the complaint herein as follows: _____

_____

_____

_____      _____
(Print server's name legibly)            (Signature) SHERIFF/DEPUTY
SHERIFF/CONSTABLE            (or other Process Server)

(NOTICE (T.C.A. 26-2-114(c))

TO THE DEFENDANT(s):

    Tennessee law provides a FOUR THOUSAND DOLLAR ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of those items be seized you would have the right to recover them. If you do not understand this exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**EXHIBIT**

A

## IN THE CIRCUIT COURT OF WEAKLEY COUNTY, TENNESSEE

HAROLD MILLER,

     Plaintiff,

v.                            No. 2010-CV-34

LAWYERS TITLE INSURANCE CORPORATION,

     Defendant.

### COMPLAINT

Comes now your Plaintiff, Harold Miller, by and through his attorney, Kyle C. Atkins, and for this cause of action against Defendant, would show this Honorable Court as follows:

1. Plaintiff is a resident of Huntingdon, Carroll County, Tennessee.

2. Upon information and belief, Defendant Lawyers Title Insurance Corporation [hereinafter "Lawyers Title"] is a corporation authorized to do and doing business in the State of Tennessee with a principal address of 601 Riverside Ave., Jacksonville, FL 32204, and can be served by its registered agent, Chief Financial Officer, at 200 E. Gaines Street, Tallahassee, Florida 32399.

3. This action is for breach of contract related to property located at 289 Highway 431, Martin, Weakley County, Tennessee.

4. Jurisdiction is proper in this Court, and venue is proper in Weakley County, the county wherein the property lies.

5. On or about September 28, 2007, Plaintiff made a loan to Eaton Park, L.P. in the amount of $172,000.00.

6. This loan was secured by a Deed of Trust on a certain piece of property located at 289 Highway 431, Martin, Weakley County, Tennessee. The Deed of Trust was also executed on or about September 28, 2007. A copy of the Deed of Trust is attached as Exhibit "A".

7. Prior to the closing on September 28, 2007, Fearnley, Califf, Martin, McDonald, Tate and Kimbrow, PLLC was asked to perform a title examination on the collateral property located at 289 Highway 431, Martin, Weakley County, Tennessee. On information and belief, Vanecia Besler Kimbrow, an attorney for Fearnley, Califf, Martin, McDonald, Tate and Kimbrow, PLLC, actually performed the title examination, which was paid for by Plaintiff and was for Plaintiff's benefit.

8. Following the closing, and on or about October 11, 2007, a title policy of insurance [hereinafter "policy"], policy no. G47-3761217, insuring Plaintiff the first priority lien position, was provided to Plaintiff. A copy of this policy is attached as Exhibit "B".

9. The policy was issued by Lawyers Title.

10. The policy provides in pertinent part as follow:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Nebraska corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of :
> ...
> 2.      Any defect in or lien or encumbrance on the title;
> ...

5.      The invalidity or unenforceability of the lien of the insured mortgage;

....

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

11. This policy failed to disclose two (2) existing liens on the property located at 289 Highway 43, Martin, Weakley County, Tennessee.

12. The first undisclosed lien was a Deed of Trust in favor of Stearns Bank National Association [hereinafter "Stearns"] in the original amount of $2,513,395 and was recorded on December 30, 2003, in T575/1455 of the Register's Office of Weakley County, Tennessee.  There was a related UCC Fixture Filing recorded on February 2, 2004, in T577/68.  The second undisclosed lien was a Deed of Trust also in favor of Stearns in the original amount of $375,400.00 and was recorded on January 20, 2004, in T576/922 of the Register's Office of Weakley County, Tennessee.

13. These liens were not excluded from coverage, were not listed as an exception from coverage, or excepted by the conditions and stipulations provided in the policy.

14. However, as a result of being recorded first, these liens in favor of Stearns had priority over the mortgage on the same property in favor of Plaintiff.

15. This was first suspected by Plaintiff on or around November, 2007, when an attorney for Plaintiff inquired regarding the liens in favor of Stearns.  Specifically, David Riddick, on behalf of Plaintiff, inquired of Venecia Kimbrow regarding the Stearns mortgages.

3

16. In response, and by email dated November 15, 2007, Vanecia Kimbrow issued assurances that Plaintiff was "fully protected under the policy issued." Ms. Kimbrow explained that the lien and related UCC filing recorded at T575/1455 in favor of Stearns had been paid in full, and that the construction loan recorded at T576/922 was in the process of being paid in full. Ms. Kimbrow further stated that her records indicated that the latter loan had been satisfied, but that she was unaware of a modification extending it. Ms. Kimbrow then stated that she was willing to issue affirmative coverage against loss to Plaintiff for each of the liens. Thus, she recognized that they existed, but insured over any loss affirmatively. Further, Ms. Kimbrow stated, "If for any reason there is a breach in the note obligations afforded your client, my underwriter, Lawyers Title Insurance Company and my insurance carrier, are obligated to cover any loss to your client." This November 15, 2007, email is attached as Exhibit "C".

17. A policy endorsement was then issued by Lawyers Title, countersigned by Fearnley & Califf, PLLC, amending the policy originally issued to Plaintiff, No. G47-3761217, which provided:

> This policy is hereby amended to issue affirmative coverage against loss to the Owner of this policy on the following matters:
>
> Deed of Trust recorded at T575/1455
> UCC related to T575/1455
> Deed of Trust recorded at T576/922

A copy of the policy endorsement is attached as Exhibit "D".

18. On May 6, 2009, foreclosure proceedings were instituted by Stearns on the property located at 289 Highway 431, Martin, Weakley County, Tennessee.

19. Notice of the foreclosure was addressed to Plaintiff in care of Community Equity

and Title.  This notice was not provided to Plaintiff prior to the foreclosure sale.
A copy of the Notice is attached as Exhibit "E".

20. On or about May 28, 2009, the property sold at foreclosure thereby impairing the
rights of Plaintiff.

21. Venecia Kimbrow did not advise Plaintiff of the foreclosure sale by Stearns, and
Plaintiff did not learn of the foreclosure sale until August, 2009.

22. Upon learning of the foreclosure sale, Plaintiff notified Lawyers Title and
requested payment under the title insurance policy.

23. After several months, Lawyers Title issued a letter to Plaintiff wherein it rejected
Plaintiff's claim, and in doing so, reasoned that Plaintiff failed to promptly notify
Lawyers Title despite having received notice of the foreclosure sale.  As stated
above, notice of the foreclosure sale was sent to Venecia Kimbrow care of
Community Equity and Title and was not forwarded to Plaintiff.

24. Lawyers Title's failure to compensate Plaintiff constitutes a breach of the contract
for which Plaintiff seeks damages.

25. As a result of Lawyers Title's breach of contract, Plaintiff has suffered damage
including the value of his note as secured by the property located at 289 Highway
431, Martin, Weakley County, Tennessee and his attorney's fees and costs
associated with defending his rights thereto and enforcing his contract with
Lawyers Title.  Specifically, Plaintiff's damages include, but may not be limited
to, the following:

a) Loss of security for his loan of $172,000.00 to Eaton Park, L.P.;

b) Attorney's fees incurred to pursue his claim for damages;

    c) Loss of interest on the loan; and

    d) Such other expenses and damages allowable by law, including prejudgment interest.

26. Lawyers Title's acts or omissions are in violation of the Tennessee Consumer Protection Act, T.C.A. §47-18-101.

27. Lawyers Title's acts and omissions have been made willfully and knowingly entitling Plaintiff to treble damages and attorney's fees pursuant to T.C.A. §47-18-109.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1. That he be allowed to file this Complaint and that same be served upon Defendant;

2. That he be awarded all relief and damages to which he is entitled under the common law and the Tennessee Consumer Protection Act, including compensatory damages, treble damages, attorney's fees, costs, prejudgment interest, and for such other general and specific relief as allowed by Tennessee law in this type of action;

3. That he be awarded his attorney's fees in connection with this action as provided for in the title insurance policy; and

4. That a jury try this matter.

6

Respectfully submitted,

KYLE C. ATKINS                BPR# 017861
Attorney for Plaintiff
Flippin, Atkins & Crider, P.C.
1302 Main Street
Humboldt, Tennessee 38343
(731) 784-2818

## Cost Bond

I acknowledge myself as surety for the costs of this cause not to exceed $1,000.00.

By: _____

7

This Instrument Prepared By
and return to:

Community Equity & Title, Inc.
attn: Monice Hagler Tate, Attorney
81 Monroe, Suite 200
Memphis, Tennessee 38103

Maximum principal indebtedness
for Tennessee recording tax purposes
is $172,000.00

### DEED OF TRUST

This deed of trust (this "Deed of Trust"), made on September __, 2007, is granted by, EATON PARK, L.P., a Tennessee limited partnership (the "Borrower") to Vanecia Kimbrow, a Tennessee resident whose office is located at 81 Monroe, Suite 200, Memphis, County of Shelby, State of Tennessee 38103 (the "Trustee"), as trustee, for the benefit of HAROLD MILLER, (the "Lender"). This Deed of Trust is intended to secure the debt owed by the Borrower to the Lender in the principal sum of ONE HUNDRED SEVENTY TWO THOUSAND AND 00/100 DOLLARS ($172,000.00), which debt is evidenced by promissory note executed by the Borrower dated concurrently with this Deed of Trust (the "Note"). The Note provides for the repayment of the debt on DEMAND, but if so demand is made, then payment in full on October 1, 2008. This Deed of Trust secures to the Lender: (a) the repayment, with interest, of the debt evidenced by the Note, including any and all renewals, extensions and modifications thereof; (b) the payment, with interest, of all other sums advanced under Section 7 hereof for the purpose of protecting the security of this Deed of Trust; and (c) the performance of the Borrower's covenants and agreements under this Deed of Trust and the Note. For this purposes the Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following-described property located in Shelby County, Tennessee:

### SEE ATTACHED LEGAL DESCRIPTION

which has the address of 289 Highway 431, City of Martin, County of Weakley, State of Tennessee (the "Property Address").

Such property is granted and conveyed together with all the improvements now or to be erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or to become a part of the property. In addition, all replacements and additions shall also be covered by this Deed of Trust. (All of the foregoing is referred to herein as the "Property").

The Borrower covenants that the Borrower is lawfully seized of the estate hereby conveyed and that the Borrower has the right to grant and convey the Property. The Borrower further covenants that the Property is unencumbered, except for encumbrances of record. The Borrower warrants that title to the Property is good and will defend generally such title against all claims and demands, subject to any encumbrances of record.

NOW THEREFORE, in consideration of the terms and conditions set forth herein, and of the mutual benefits accruing to the parties under this Deed of Trust, the Borrower and Lender covenant and agree as follows:

1.  Payment of Principal and Interest; Prepayment and Late Charges. The Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.  Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by the Lender and until the debt owed under the Note is paid in full, the Borrower shall pay to the Lender on the day monthly payments are due under the Note a sum (the "Funds") equal to one-twelfth of: (a) yearly taxes and assessments that may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any (these enumerated items, collectively, the "Escrow Items"). The Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including the Lender if the Lender is such an institution). The Lender shall apply the Funds to pay the Escrow Items. The Lender may not charge for holding and applying the Funds, analyzing the account, or verifying the Escrow Items, unless the Lender pays the Borrower interest on the Funds and applicable law permits the Lender to make such a charge. The Borrower and the Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, the Lender shall not be required to pay the Borrower any interest or earnings on the Funds. The Lender shall give to the Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by the Lender, together with the future monthly payments of the Funds payable prior to the due dates of the Escrow Items, shall exceed the amount required to pay the Escrow Items when due, the excess shall be, at the Borrower's option, either promptly repaid to the Borrower or credited to the Borrower toward future monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the

1 of 6

**EXHIBIT**

**A**

Escrow Items when due, the Borrower shall pay to the Lender any amount necessary to make up the deficiency in one or more payments as required by the Lender.

On payment in full of all sums secured by this Deed of Trust, the Lender shall promptly refund to the Borrower any Funds held by the Lender. If, under Section 19 of this Deed of Trust, the Property is sold or acquired by the Lender, the Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by the Lender, any Funds held by the Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3.      Application of Payments. Unless applicable law provides otherwise, all payments received by the Lender under Section 1 and 2 of this Deed of Trust shall be applied in the following order: (i) first, to late charges due under the Note; (ii) second, to prepayment charges due under the Note; (iii) third, to amounts payable under Section 2 of this Deed of Trust; (iv) fourth, to interest due; and (v) finally, to principal due.

4.      Charges; Liens. The Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property that may attain priority over this Deed of Trust, as well as leasehold payments or ground rents, if any.  The Borrower shall pay these obligations in the manner provided in Section 2 or, if not paid in that manner, the Borrower shall pay them on time directly to the person to whom such payment is owed.  The Borrower shall promptly furnish to the Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, the Borrower shall, upon request, furnish to the Lender receipts evidencing the payments.

The Borrower shall promptly discharge any lien not recorded as of the date of this Deed of Trust that has priority over this Deed of Trust, unless the Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the Lender; (b) contests in good faith the lien through, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Deed of Trust.  If the Lender determines that any part of the Property is subject to a lien not recorded as of the date of this Deed of Trust which may attain priority over this Deed of Trust, the Lender may give the Borrower a notice identifying the lien.  Within ten (10) days of receiving such a notice, the Borrower shall satisfy the lien or take one or more of the actions set forth above.

5.      Hazard Insurance.  The Borrower shall keep the improvements now existing or to be erected on the Property insured against loss by: (i) fire; (ii) hazards included within the term "extended coverage"; and (iii) any other hazards for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurance carrier providing the insurance shall be chosen by the Borrower subject to the Lender's approval, which approval shall not be withheld unreasonably.

All insurance policies and renewals shall be acceptable to the Lender and shall include a standard mortgage clause.  The Lender shall have the right to hold the policies and renewals.  If the Lender requires, the Borrower shall promptly give to the Lender all receipts of paid premiums and renewal notices.  In the event of loss, the Borrower shall give prompt notice to the insurance carrier and the Lender.  The Lender may make proof of loss if not made promptly by the Borrower.

Unless the Lender and the Borrower otherwise agree in writing, insurance proceeds shall be applied to the restoration or repair of the damaged Property, if the restoration or repair is economically feasible and the Lender's security is not lessened.  If the restoration or repair is not economically feasible or the Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to the Borrower.  If the Borrower abandons the Property, or does not answer within thirty (30) days a notice from the Lender that the insurance carrier has offered to settle a claim, the Lender may collect the insurance proceeds.  The Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due.  The thirty (30)-day answer period will begin when the notice is given.

Unless the Lender and the Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Sections 1 and 2 or change the amount of such payments.  If, under Section 19, the Property is acquired by the Lender, the Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to the Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.

6.      Preservation and Maintenance of Property; Leaseholds.  The Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate or commit waste.  If this Deed of Trust is on a leasehold, the Borrower shall comply with the provisions of the lease, and if the Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless the Lender agrees to the merger in writing.

7.      Protection of the Lender's Rights in the Property; Mortgage Insurance.  If the Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or there exists a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then the Lender may do and pay for whatever is necessary to protect the value of the Property and the Lender's rights in the Property.  The Lender's actions may include paying any sums secured by a lien that has priority over this Deed of Trust, appearing in court, paying reasonable attorney fees and entering on the Property to make repairs.  The right of the Lender to take action under this paragraph does not in any way impose on the Lender an obligation to take action.

2 of 6

Any amounts disbursed by the Lender under this Section 7 shall become additional debt of the Borrower secured by this Deed of Trust. Unless the Borrower and the Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the interest rate set forth in the Note and shall be payable, with interest, immediately upon notice from the Lender to the Borrower requesting payment.

If the Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, the Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with the Borrower's and the Lender's written agreement or applicable law.

8.      Inspection.  The Lender or its agent may make reasonable entries on, and inspections of, the Property.  At least twenty-four (24) hours in advance of the inspection the Lender shall give the Borrower notice specifying reasonable cause for the inspection.

9.      Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for a conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to the Borrower.  In the event of a partial taking of the Property, unless the Borrower and the Lender otherwise agree in writing, the sums secured by this Deed of Trust shall be reduced by payment to the Lender from the proceeds of such partial taking of the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking.  Any balance shall be paid to the Borrower.

If the Property is abandoned by the Borrower or if the Borrower fails to respond to the Lender within thirty (30) days after receipt by the Borrower from the Lender of a written notice indicating that the condemnor offers to make an award or settle a claim for damages, the Lender is authorized to collect and apply the proceeds of the taking, at its option, either to the restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due.

Unless the Lender and the Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installment payments referred to in Sections 1 and 2 or change the amount of those payments.

10.     Borrower Not Released; Forbearance by the Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by the Lender to any successor in interest of the Borrower shall not operate to release the liability of the original Borrower or the Borrower's successors in interest.  The Lender shall not be required to commence proceedings against any successor in interest or refuse to extend the time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or the Borrower's successors in interest.  Any forbearance by the Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

11.     Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Deed of Trust shall bind and benefit the successors and assigns of the Lender and the Borrower, subject to the provisions of Section 17 hereof. If more than one borrower signs the Note, all such Borrowers shall be jointly and severally bound by the covenants and agreements set forth in the Note and this Deed of Trust.  Any Borrower who co-signs this Deed of Trust but does not execute the Note: (b) is co-signing this Deed of Trust only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that the Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without the consent of the co-signing Borrower.

12.     Loan Charges.  If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from the Borrower that exceeded permitted limits will be refunded to the Borrower.  The Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to the Borrower.  If a refund reduces the principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

13.     Legislation Affecting the Lender's Rights.  If the enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, the Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Section 19 of this Deed of Trust. If the Lender exercises this option, the Lender shall take the steps specified in the second paragraph of Section 17 of this Deed of Trust.

14.     Notices.  Any notice to the Borrower provided for in this Deed of Trust shall be given by personal delivery of such notice, or by mailing such notice via first class mail, to the Borrower, unless applicable law requires use of

3 of 6

another method. The notice shall be directed to the Property Address or to any other address the Borrower designates by written notice to the Lender. Any notice to the Lender shall be given by personal delivery of such notice, or by mailing such notice via first class mail, to the Lender's address set forth in this Deed of Trust or to any other address the Lender designates by written notice to the Borrower. Any notice provided for in this Deed of Trust shall be deemed to have been given to the Borrower or the Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Deed of Trust shall be governed and construed in accordance with substantive federal law and the substantive law of the jurisdiction in which the Property is located. Whenever possible, each provision of this Deed of Trust of the Note shall be interpreted in such manner as to be effective, valid and enforceable under such applicable law. If any provision of this Deed of Trust or the Note, or the application of any such provision to any party to or beneficiary of this Deed of Trust or the Note or to any circumstance, shall be determined to be ineffective, invalid or unenforceable to any extent, the remaining provisions of this Deed of Trust, or the application of any remaining provision to any party to or beneficiary of this Deed of Trust or the Note or to any circumstance, shall not be affected thereby, and shall be effective, valid and enforced to the fullest extent permitted by law.

16. **Borrower's Copy.** The Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

17. **Transfer of the Property or a Beneficial Interest in the Borrower.** If all or any part of the Property, or any interest in the Property, is sold or transferred (or, if the Borrower is not a natural person, a beneficial interest in the Borrower is sold or transferred) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by the Lender if its exercise is prohibited by any law applicable as of the date of this Deed of Trust.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Deed of Trust. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on the Borrower.

18. **Borrower's Right to Reinstate.** Except in the case of acceleration under Sections 13 or 17 of this Deed of Trust, and provided the conditions set forth below are met, the Borrower shall have the right to have enforcement of this Deed of Trust discontinued, thus reinstating the terms of the Deed of Trust and the Note, at any time prior to the earlier of: (a) five (5) days for such other period as applicable law may specify for reinstatement) before the sale of the Property pursuant to any power of sale contained in this Deed of Trust; or (b) entry of a judgment enforcing this Deed of Trust. The Borrower's right to reinstate the terms of this Deed of Trust and the Note are conditioned upon the Borrower: (a) paying the Lender all sums that then would be due under this Deed of Trust and the Note had no acceleration occurred; (b) curing any default of the Borrower with respect to any other covenant to or agreement with the Lender; (c) paying all expenses incurred in enforcing this Deed of Trust, including, but not limited to, reasonable attorney fees; and (d) taking such action as the Lender may reasonably require to assure that the lien of this Deed of Trust, the Lender's rights in the Property, and the Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unchanged. Upon reinstatement by the Borrower in accordance with the provisions of this paragraph, this Deed of Trust and the obligations secured hereby shall remain fully effective as if no acceleration had occurred.

19. **Acceleration; Remedies.** Prior to acceleration of the sums secured by this Deed of Trust or the Note (excluding acceleration under Sections 13 and 17 of this Deed of Trust, unless applicable law provides otherwise), the Lender shall deliver to the Borrower notice of acceleration containing the certain information described below. The acceleration notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than thirty (30) days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform the Borrower of his/her right after acceleration to reinstate the terms of the Note and this Deed of Trust and the right to bring a court action to assert the non-existence of a default or any other defense of the Borrower against acceleration and sale. If the default is not cured on or before the date specified in the notice, the Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust without further demand and may invoke the power of sale and any other remedies permitted by applicable law. The Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including, but not limited to, reasonable attorney fees and the costs of title evidence.

If the Lender invokes the power of sale, the Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and the Lender or the Trustee shall mail a copy of the notice of sale to the Borrower in the manner provided in Section 14 of this Deed of Trust. The Trustee, without demand on the Borrower, shall sell the Property at a public auction to the highest bidder at the time and under the terms designated in the notice of sale. The Lender, or its designee, may purchase the Property at any sale.

The Trustee shall deliver to the purchaser at any such public auction a trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made in them. The Trustee shall apply the proceeds of the sale in the

4 of 6

following order: (a) to all expenses of the sale, including, but not limited to, reasonable trustee's and attorney fees; (b) to all sums secured by this Deed of Trust and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 19 of this Deed of Trust, the Borrower, or any person holding possession of the Property through the Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, the Borrower, or such person holding possession of the Property through the Borrower, shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after the sale.

20.     **Lender in Possession.** Upon the occurrence of acceleration under Section 19 of this Deed of Trust or abandonment of the Property, the Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter onto, take possession of and manage the Property and to collect rents due with respect to the Property, including those which are past due. Any rents collected by the Lender, its agent or a receiver shall be applied in the following order: (i) to payment of the costs of managing the Property and collecting the rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney fees; and (ii) to the sums secured by this Deed of Trust.

21.     **Release.** Upon payment of all sums secured by this Deed of Trust, the Lender shall release this Deed of Trust without charge to the Borrower.

22.     **Substitute Trustee.** The Lender, at its sole option, may from time to time remove the Trustee and appoint a successor trustee to any Trustee appointed under this Deed of Trust by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee shall succeed to all the title, power and duties conferred on the Trustee in this Deed of Trust and by applicable law.

23.     **Waivers.** The Borrower waives his/her right of homestead, equity of redemption and statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

By signing below, the Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust.

**EATON PARK, LP**
**A Tennessee Limited Partnership**

By Delta Southern 2004, LLC
A Tennessee Limited Liability Company
Its General Partner

By: _____
Jeff Simmons, Chief Manager

STATE OF TENNESSEE
COUNTY OF Shelby

Before me, the undersigned Notary Public of the State and County aforesaid, personally appeared Jeff Simmons, with whom I am personally acquainted (or proved on the basis of satisfactory evidence), and who acknowledged himself to be the Chief Manager of Delta Southern 2004, LLC, the General Partner of EATON PARK, L.P., the within named bargainor, a Tennessee limited partnership, and that he as such Chief Manager executed the foregoing instrument for the purposes therein contained, by signing the name of the limited partnership by himself as such Chief Manager.

WITNESS my hand and Notarial Seal at office this ____ day of September, 2007.

_____
Notary Public

My commission expires:

1/29/08

NOTARY
PUBLIC
AT
LARGE

MY COMMISSION EXPIRES:
January 29, 2008

## Exhibit A

### DESCRIPTION

Being a portion of the Martin Meadows, L.P. 23.06 acres as recorded in Deed Book 394, page 34 in the Register's Office of Weakley County, Tennessee, located in Martin, Weakley County, Tennessee, and being more particularly described as follows:

Beginning at a found iron pin in the southerly line of Tennessee Highway 431 (60' R.O.W.), said point being the northwesterly corner of the William Mark &Julie Higgs property as recorded in Deed Book 382, page 379 in the Register's Office of Weakley County, Tennessee, said point also being the northwesterly corner of the property herein described; thence proceed North 64 degrees 12 minutes 08 seconds West, along said southerly line of Tennessee Highway 431, a distance of 312.14 feet to a point; thence proceed South 25 degrees 47 minutes 53 seconds West a distance of 153.22 feet to a point; thence proceed South 64 degrees 12 minutes 8 seconds East a distance of 48.97 feet to a point; thence proceed South 9 degrees 15 minutes 29 seconds West a distance of 978.73 feet to a point; thence proceed South 80 degrees 44 minutes 31 seconds East a distance of 152.54 feet to a point; thence proceed North 9 degrees 39 minutes 02 seconds East a distance of 42.45 feet to a point; thence South 80 degrees 27 minutes 10 seconds East a distance of 133.70 feet to a point in the easterly line of said Martin Meadows L.P. 23.06 acres; thence proceed, along said easterly line North 9 degrees 50 minutes 24 seconds East a distance of 1008.71 feet to the Point-of-beginning.

Containing 317,455.00 sq. ft. or 7.29 acres

*See D407 Page 1410*
*D397 Page 364*

BK/PG:T623/828-833

## 07004665

| | | |
|---|---|---|
| 6 PGS : AL - TRUST DEED | | |
| APRIL BARCHI 25649 | | |
| 10/15/2007 - 04:15 PM | | |
| VALUE | | 172000.00 |
| MORTGAGE TAX | | 197.50 |
| TRANSFER TAX | | 0.00 |
| RECORDING FEE | | 30.00 |
| DP FEE | | 2.00 |
| REGISTER'S FEE | | 1.00 |
| TOTAL AMOUNT | | 229.50 |

STATE of TENNESSEE, WEAKLEY COUNTY

**DONNA L. WINSTEAD**
REGISTER OF DEEDS

6 of 6

BK/PG: D407/1410-1414

07004662

| | |
|---|---|
| 5 PGS : AL - AFFIDAVIT SCRIVENERS ERR | |
| SHAN BATCH: 25646 | |
| 09/28/2007 - 10:52 AM | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 25.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 27.00 |

STATE OF TENNESSEE, WEAKLEY COUNTY
**DONNA L. WINSTEAD**
REGISTER OF DEEDS

This Instrument Prepared by
Vanecia B. Kimbrow, Esq.
81 Monroe, Ste. 200
Memphis, TN 38103

## OF SCRIVENER'S ERROR EXECUTED
## PURSUANT TO T.C.A. 66-24-101 (a) (26)

WHEREAS, I, VANECIA B. KIMBROW, based on information provided to me by the seller, prepared that certain Special Warranty Deed dated November 15, 2004, between Martin Meadows, L. P. as the seller and Eaton Park, L. P., as the buyer, recorded November 16, 2004 as Instrument Number 04005913 and at Book D397, Page 364-366,

WHEREAS, at the time of the preparation of said deed, the legal description was incorrect and such information was unknown to the undersigned as the preparer; and

WHEREAS, the parties which now desire to have the legal description corrected; and

WHEREAS, the parties request such to be treated as a scrivener's error as to have the legal description corrected; and

WHEREAS, the undersigned has agreed to do so.

NOW, THEREFORE, in order to correct said scrivener's error as set out hereinabove, pursuant to T.C. A. 66-24-101 (a) (26), I, Vanecia B. Kimbrow, do hereby amend the aforementioned Special Warranty Deed of record as set forth above by substituting the following as the description of said real estate:

### SEE ATTACHED LEGAL DESCRIPTION ATTACHED AS
### "EXHIBIT A"

Being the same property conveyed to seller at Instrument Number 03060613 and filed in the Office of the Weakley County Register.

This the 24th day of September, 2007.

_____
VANECIA B. KIMBROW
81 Monroe, Ste. 200
Memphis, TN 38103

STATE OF TENNESSEE
COUNTY OF SHELBY

On this 24th day of September, 2007, before me personally appeared Vanecia B. Kimbrow, to me known or proved o me on the basis of satisfactory evidence to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he executed the same as her free act and deed.

Witness my hand and seal of office in said County on the day above written.

_____
Notary Public

My Commission expires: October 6, 2007

MY COMMISSION EXPIRES:
October 8, 2007

Exhibit A

## \*\* CORRECTED LEGAL \*\*

DESCRIPTION

Being a portion of the Martin Meadows, L.P. 23.06 acres as recorded in Deed Book 394, page 34 in the Register's Office of Weakley County, Tennessee, located in Martin, Weakley County, Tennessee, and being more particularly described as follows:

Beginning at a found iron pin in the southerly line of Tennessee Highway 431 (60' R.O.W.), said point being the northwesterly corner of the William Mark &Julie Higgs property as recorded in Deed Book 382, page 379 in the Register's Office of Weakley County, Tennessee, said point also being the northwesterly corner of the property herein described; thence proceed North 64 degrees 12 minutes 08 seconds West, along said southerly line of Tennessee Highway 431, a distance of 312.14 feet to a point; thence proceed South 25 degrees 47 minutes 53 seconds West a distance of 153.22 feet to a point; thence proceed South 64 degrees 12 minutes 8 seconds East a distance of 48.07 feet to a point; thence proceed South 9 degrees 15 minutes 29 seconds West a distance of 978.73 feet to a point; thence proceed South 80 degrees 44 minutes 31 seconds East a distance of 152.54 feet to a point; thence proceed North 9 degrees 39 minutes 02 seconds East a distance of 42.45 feet to a point; thence South 80 degrees 27 minutes 10 seconds East a distance of 133.70 feet to a point in the easterly line of said Martin Meadows L.P. 23.06 acres; thence proceed, along said easterly line North 9 degrees 50 minutes 24 seconds East a distance of 1008.71 feet to the Point-of-beginning.

Containing 317,455.00 sq. ft. or 7.29 acres

# Assurance Title & Escrow
# Fearnley and Califf, PLLC
### Attorneys at Law
### 6389 Quail Hollow, Suite 202
### Memphis, Tennessee  38120

Michael A. Fearnley
Cary R. Califf
Myra E. Quinn
W. Grady McDonald
Monice Hagler Tate
Vanecia B. Kimbrow

Telephone (901) 767-6200
Facsimile (901) 762-0067

Date: October 11, 2007

Harold Miller
289 Highway 431
Martin TN

RE:  FINAL DOCUMENTS
     BUYERS NAME:
     PROPERTY:      289 Hwy 431
     OUR FILE NO.:  VK704025

To Whom It May Concern:

Please find enclosed:

| x | | 1. | The original recorded Deed(s) of Trust. |
| | | 2. | The original recorded Assignment. |
| x | | 3. | The Loan Policy. |
| | | 4. | Other: _____ |

Should you have any questions or comments, please do not hesitate to contact our office.

Respectfully,

Leslie McClain
Title Policy Department

EXHIBIT

B

# LOAN POLICY OF TITLE INSURANCE

## Issued by **Lawyers Title Insurance Corporation**


**LandAmerica
Lawyers Title**

*Lawyers Title Insurance Corporation is a member of the
LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

G47-3761217

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Nebraska corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest:

Secretary

*[SEAL: LAWYERS TITLE INSURANCE CORP · NEBRASKA]*

By:

President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

LOAN POLICY

SCHEDULE A

Order No: VK704025

Policy No. G47-3761217

Amount of Insurance: $172,000.00

Premium: $376.00

Date of Policy: September 28, 2007, 04:15pm

1.  Name of Insured:

    **Harold Miller its successors and/or assigns as their interest may appear.**

2.  The estate or interest in the land which is encumbered by the insured mortgage is:

    **Fee Simple**

3.  Title to the estate or interest in the land is vested in:

    - **Eaton Park, LP by virtue of Special Warranty Deed in Book 397, Page 364, in the Clerk's Office of Weakley County, TN.**

4.  The insured mortgage and assignments thereof, if any, are described as follows:

    - **Deed of Trust from Eaton Park, LP to Vaneica Kimbrow Trustee, in favor of Harold Miller, dated September 28, 2007, recorded September 28, 2007 at 04:15 p.m., at Instrument No. 07004665, in the amount of $172,000.00 in the Register's Office of Weakley County, TN.**

5.  The land referred to in this policy is described as follows:

    **SEE ATTACHED EXHIBIT "A"**

Countersigned
**Community Equity & Title**

By _____

Authorized Signatory

Lawyers Title Insurance Corporation

This policy is invalid unless the cover sheet, Schedule A and Schedule B are attached.

Page 1

Policy No.  G47-3761217

**SCHEDULE A**
**Continued**

# Exhibit A

DESCRIPTION

Being a portion of the Martin Meadows, L.P. 23.06 acres as recorded in Deed Book 394, page 34 in the Register's Office of Weakley County, Tennessee, located in Martin, Weakley County, Tennessee, and being more particularly described as follows:

Beginning at a found iron pin in the southerly line of Tennessee Highway 431 (60' R.O.W.), said point being the northwesterly corner of the William Mark &Julie Higgs property as recorded in Deed Book 382, page 379 in the Register's Office of Weakley County, Tennessee, said point also being the northwesterly corner of the property herein described; thence proceed North 64 degrees 12 minutes 08 seconds West, along said southerly line of Tennessee Highway 431, a distance of 312.14 feet to a point; thence proceed South 25 degrees 47 minutes 53 seconds West a distance of 153.22 feet to a point; thence proceed South 64 degrees 12 minutes 8 seconds East a distance of 48.07 feet to a point; thence proceed South 9 degrees 15 minutes 29 seconds West a distance of 978.73 feet to a point; thence proceed South 80 degrees 44 minutes 31 seconds East a distance of 152.54 feet to a point; thence proceed North 9 degrees 39 minutes 02 seconds East a distance of 42.45 feet to a point; thence South 80 degrees 27 minutes 10 seconds East a distance of 133.70 feet to a point in the easterly line of said Martin Meadows L.P. 23.06 acres; thence proceed, along said easterly line North 9 degrees 50 minutes 24 seconds East a distance of 1008.71 feet to the Point-of-beginning.

Containing 317,455.00 sq. ft. or 7.29 acres

**LOAN POLICY**

**SCHEDULE B - PART I**

Date of Policy:  September 28, 2007

Policy No.  G47-3761217                                                Order No: VK704025

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. The lien of the following general and special taxes for the year or years specified and subsequent years: City of Martin taxes and Weakley County taxes

2. Taxes and/or assessments levied or assessed against the subject property pursuant to the provisions of TCA 67-5-603, which have not been assessed and are not payable, as of the date of this commitment/policy.

3. Easements of record at Instrument No. Book 400, Page 239, as recorded in the said Register's Office.

4. Easements of record at Instrument No. Book 400, Page 254, as recorded in the said Register's Office.

Lawyers Title Insurance Corporation                                    Page 1

## LOAN POLICY

### SCHEDULE B - PART II

Date of Policy:  September 28, 2007

Policy No.  G47-3761217

Order No: VK704025

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

**NONE**

Lawyers Title Insurance Corporation

Page 1

# LAWYERS TITLE INSURANCE CORPORATION

### ENDORSEMENT

Attached to and forming a part of Policy No.: **G47-3761217**
of **LAWYERS TITLE INSURANCE CORPORATION**.

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The existence, at Date of Policy, of any of the following:
    (a) Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
    (b) Unless expressly excepted in Schedule B:
        (1) Present violations on the land of any enforceable covenants, conditions or restrictions, and any existing improvements on the land which violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.
        (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.
        (3) Any encroachment of existing improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.
        (4) Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
        (5) Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:
    (a) invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or
    (b) loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3. Damage to existing improvements, including lawns, shrubbery or trees:
    (a) which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;
    (b) resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions, or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

This Endorsement shall not be valid or binding until countersigned by an authorized signatory as designated below.

Signed and sealed this **September 28, 2007**.

Countersigned:

BY _____
Authorized Signatory

ISSUED BY:
**COMMUNITY EQUITY & TITLE**
81 Monroe, Suite 200
Memphis, TN 38103

ALTA ENDORSEMENT - Form 9 (Restrictions, Encroachments, Minerals) (Revised 1-17-04)

# LAWYERS TITLE INSURANCE CORPORATION

### ENDORSEMENT

Attached to and forming a part of Policy No.: G47-3761217
of **LAWYERS TITLE INSURANCE CORPORATION.**

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

**TENNESSEE.**

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Signed and sealed this **September 28, 2007.**

Countersigned:

BY _____
      Authorized Signatory

ISSUED BY:
**COMMUNITY EQUITY & TITLE**
**81 Monroe, Suite 200**
**Memphis, TN 38103**

ALTA ENDORSEMENT - Form 8.1 (Environmental Protection Lien) (Revised 1-17-04)

CONDITIONS AND STIPULATIONS

1.    DEFINITION OF TERMS.
    The following terms when used in this policy mean:
    (a)    "insured": the insured named in Schedule A. The term "insured" also includes
        (i)    the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);
        (ii)    any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;
        (iii)    the parties designated in Section 2(a) of these Conditions and Stipulations.
    (b)    "insured claimant": an insured claiming loss or damage.
    (c)    "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.
    (d)    "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.
    (e)    "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
    (f)    "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.
    (g)    "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.
2.    CONTINUATION OF INSURANCE.
    (a)    After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.
    (b)    After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.
    (c)    Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:
        (i)    the Amount of Insurance stated in Schedule A;
        (ii)    the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or
        (iii)    the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.
3.    NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.
    The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of this prejudice.
4.    DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.
    (a)    Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any

third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.
    (b)    The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
    (c)    Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.
    (d)    In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.
5.    PROOF OF LOSS OR DAMAGE.
    In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.
    In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.
6.    OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.
    In case of a claim under this policy, the Company shall have the following additional options:
    (a)    To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.
        (i)    to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or
        (ii)    to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.
        If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.
        Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.
    (b)    To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

## CONDITIONS AND STIPULATIONS
(continued)

(i)  to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.  DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)  The liability of the Company under this policy shall not exceed the least of:

(i)  the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii)  the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii)  the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)  In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)  The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.  LIMITATION OF LIABILITY.**

(a)  If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)  In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)  The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)  The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a)  All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)  Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)  Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10.  LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11.  PAYMENT OF LOSS.**

(a)  No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or

destruction shall be furnished to the satisfaction of the Company.

(b)  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12.  SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a)  *The Company's Right of Subrogation.*

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b)  *The Insured's Rights and Limitations.*

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c)  *The Company's Rights Against Non-insured Obligors.*

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13.  ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14.  LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a)  This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)  Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c)  No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15.  SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16.  NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at Consumer Affairs Department, P.O. Box 27567, Richmond, Virginia 23261-7587.

**cindy miller**

| | |
|---|---|
| **From:** | Vanecia Kimbrow [cmequitytitle@aol.com] |
| **Sent:** | Thursday, November 15, 2007 8:16 AM |
| **To:** | david.a.riddick@gmail.com |

**Subject:** Eaton Park

Mr. Riddick,

It is my understanding that you have concerns in relation to the validity and protection of the title policy issued to your client, Harold Miller, for the $172,000.00 loan to Eaton Park Apartments, L.P. I would like to issue assurances that your client is fully protected under the policy issued. If for any reason there is a breach in the note obligations afforded your client, my underwriter, Lawyers Title Insurance Company and my insurance carrier, are obligated to cover any loss to your client.

In way of clarification, the lien and its related UCC filing fixture filing recorded at instrument numbers T575/1455 in favor of Stearns Bank were in relation to a predevelopment loan that has been paid in full. My office handled both this predevelopment closing and the subsequent construction closing recorded at instrument number T576/922 from which proceeds were used to satisfy the predevelopment loan.

As to the construction loan closing recorded at T576/922, Stearns Bank is in the process of having this obligation satisfied as part of the Martin Meadows conversion to permanent financing. Based on conversations with Stearns Bank, this debt is in the process of being paid in full and all payments are current and in good standing. My records had indicated that this note had been satisfied, however, I was unaware of a modification that had been executed extending the note to February 2008. All the requisite releases related to the herein referenced debts should be available within 90 to 120 days. In the interim, I would be willing to issue affirmative coverage against loss to Harold Miller for each of these matters. Thus, we would recognize that they exist, but insure over any loss affirmatively. That is the same coverage your client currently has, but it allows for specific language to address these specific encumbrances. There are no other liens that would enjoy a prior position to Mr. Miller. Mr. Miller is and would continue to be fully covered against any and all loss associated with his loan to Eaton Park Apartments, L.P.

I trust that this correspondence gives you the requisite assurances that your client is fully protected and our office will stand behind our policy completely. Should you have any further concerns, please feel free to contact me at (901) 870-7965.

Sincerely,
Vanecia Belser Kimbrow, Esq.
Fearnley Califf Martin McDonald Tate & Kimbrow
81 Monroe
Suite 200
Memphis, Tennessee 38103
(901) 522-9166 Telephone
(901) 522-9168 Facsimile

The information contained in this message is, or may be, attorney privileged, personal, confidential and intended only for the recipient(s) named above. Any review, distribution, copying or other dissemination of this message by any person other than the intended recipient(s) is strictly prohibited. Accordingly, if you have received this message in error, please: (I) notify the sender immediately via return electronic mail or telephone; and (ii) permanently delete and disregard this message.



EXHIBIT
C

11/10/2009

LAWYERS TITLE
INSURANCE CORPORATION

National Headquarters
Richmond, VA

POLICY ENDORSEMENT

Code Name:                                     Case No: VK704025
Eaton Park, LP

Attached to and made a part of Lawyers Title Insurance Corporation Policy No.:   G47-3761217

This policy is hereby amended to issue affirmative coverage against loss to the Owner of this policy on the
following matters:

Deed of Trust recorded at T575/1455
UCC related to T575/1455 .
Deed of Trust recorded at T576/922

The total liability of the Company under said policy, binder or commitment and under this and any prior
endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said
policy, binder or commitment, as the same may be specifically amended in dollar amount by this or any
prior endorsements, and the costs which the Company is obligated to pay under the Conditions and
stipulations of the policy.

This endorsement is made a part of said policy, binder or commitment and is subject to all the terms and
provisions thereof, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid
policy, binder or commitment unless otherwise expressly stated.

In witness whereof, the Company has caused this Endorsement to be signed and sealed as of this the 16th
day of November, 2007, to be valid when countersigned by an authorized officer or agent of the Company,
all in accordance with its By-Laws.

Issued at Memphis, TN Lawyers Title Insurance Corporation

Countersigned:                                         Janet A. Albert, President
Fearnley & Califf, PLLC
                                                       John M. Carter, Secretary

Authorized Officer or Agent

Form 91-11-A (REV 4/76)
035-2-091-1100/1

EXHIBIT

D

# WALLER LANSDEN DORTCH & DAVIS, LLP

NASHVILLE CITY CENTER
511 UNION STREET, SUITE 2700
NASHVILLE, TENNESSEE 37219-8966
(615) 244-6380
FAX: (615) 244-6804
www.wallerlaw.com

1901 SIXTH AVENUE NORTH, SUITE 1400
BIRMINGHAM, ALABAMA 35203-2623
(205) 214-6380

333 SOUTH GRAND AVENUE, SUITE 1800
LOS ANGELES, CALIFORNIA 90071
(213) 362-3680

May 6, 2009



Mr. Harold Miller
c/o Community Equity & Title, Inc.
81 Monroe
Suite 200
Memphis, TN 38103

> RE:   Foreclosure Sale – Martin Meadows Limited Partnership
>       Property:  289 Highway 431
>       Martin, Weakley County, Tennessee

Dear Mr. Miller:

Under instructions from our client, Stearns Bank National Association, we are commencing foreclosure proceedings pursuant to the deed of trust described in the attached foreclosure sale notice which was executed by Martin Meadows Limited Partnership. It is our understanding that a portion of the property encumbered by the deed of trust described in the enclosed notice is encumbered by a subordinate Deed of Trust from Eaton Park, L.P., to Vanecia Kimbrow, Trustee, securing a note payable to Harold Miller in the original principal amount of $172,000.00, of record in Book T623, page 828, Register's Office for Weakley County, Tennessee.

This letter is simply to advise you that the date of the foreclosure sale will be Thursday, May 28, 2009, at 12:00 noon, as provided in the attached foreclosure notice which will appear in the Weakley County Press on May 7, 14 and 21, 2009.

If you have any questions concerning this matter, please do not hesitate to contact me.

Sincerely,

Stephen C. Baker

SCB/jr

cc:   Stearns Bank National Association



EXHIBIT
E

2827383.1

7009 2820 0003 2648 3167

ST
DEPARTMENT O
500 JAMES
NASHVILLE, TENNESSEE 37243

7009 2820 0003 2648 3167          8/5/10
LAWYERS TITLE INSURANCE CORPORATION
800 S. GAY STREET, STE 2021, % C T CORP.
KNOXVILLE, TN 37929-9710